## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:19-CV-22762-MGC

| | |
|---|---|
| CARLOS ALFARO; and HENRIETTA I. EGBUNIKE, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>v.<br><br>BANK OF AMERICA, N.A.; and BANK OF AMERICA CORPORATION,<br><br>        Defendants. | <u>CLASS ACTION</u><br><br>(JURY TRIAL DEMANDED) |

### <u>FIRST AMENDED CLASS ACTION COMPLAINT[1]</u>

Plaintiffs Carlos Alfaro and Henrietta I. Egbunike, individually and on behalf of all others similarly situated, complain and allege as follows based on personal knowledge as to themselves, on the investigation of their counsel, and on information and belief as to all other matters:

### <u>NATURE OF ACTION</u>

1.      Plaintiffs bring this First Amended Class Action Complaint against Bank of America, N.A. and Bank of America Corporation (collectively, "Bank of America" or "Defendant") for legal and equitable remedies resulting from Bank of America's practices of (1) assessing 3% "international transaction fees" to debit card transactions made by its personal deposit accountholders prior to November 6, 2015, and (2) assessing 3% "international transaction fees" to domestic debit card transactions with PayPal made by its personal deposit accountholders on and after November 6, 2015 – in each case in clear breach of the contractual obligations that Bank of America owed to Plaintiffs and all of its other accountholders over those period of time.

---

[1]      Plaintiffs file this First Amended Class Action Complaint within twenty-one (21) days of service of the original Class Action Complaint pursuant to Federal Rule of Civil Procedure 15(a)(1)(A). (*See* ECF Nos. 4-5 (executed Summonses reflecting Defendants served with Class Action Complaint on July 16, 2019).)

2.      At all times relevant to this action, Bank of America's relationship with Plaintiffs and all of its personal deposit account holders has been governed by a standardized set of contractual documents comprised of the "Deposit Agreement and Disclosures" and the incorporated "Personal Schedule of Fees" – the terms of which are drafted by Bank of America, amended by Bank of America from time to time at its convenience and complete and sole discretion, and uniformly imposed by Bank of America on all of its customers.  *See* Deposit Agreement and Disclosures (hereinafter, the "Deposit Agreement"), the current version of which is dated July 19, 2019 and attached hereto as Exhibit A, at 2 ("You understand that these terms, as we may change or supplement them periodically, are a binding contract between you and us for your deposit account and your deposit relationship."); Personal Schedule of Fees (hereinafter, the "Schedule of Fees"), the current version of which is dated May 17, 2019 and attached hereto as Exhibit B, at 1 ("Your account and deposit relationship with us are governed by this schedule of fees and the Deposit Agreement and Disclosures. . . . These agreements are part of the binding contract between you and us for your account and deposit relationship.").

3.      At all times relevant to this action, Bank of America promised Plaintiffs and all of its other personal deposit accountholders that the Schedule of Fees (incorporated within the Deposit Agreement) contained an exhaustive list of all of the various account and transaction-related fees which they could be charged, the amount of each such fee, and the circumstances in which each such fee would be assessed.

4.      At no time prior to November 6, 2015 did the Schedule of Fees disclose the existence of an "international transaction fee," the amount of any such undisclosed "international transaction" fee, or the circumstances in which a debit card transaction would be assessed any such fee.  It was not until Bank of America revised the Schedule of Fees on November 6, 2015 that it first disclosed the existence of an "international transaction fee," the amount of the fee (3% of the U.S. dollar amount of the underlying transaction), and the circumstances in which this previously-undisclosed fee would be assessed.  Accordingly, prior to November 6, 2015, Bank of America was plainly not permitted to assess *any* "international transaction fees" to *any* debit card

transactions initiated by *any* of its personal deposit accountholders nationwide. Despite the fact that Bank of America was contractually prohibited from assessing "international transaction fees" to debit card transactions prior to November 6, 2015, Bank of America routinely assessed 3% "international transaction fees" to debit card transactions initiated by Plaintiffs and millions of its other personal deposit account holders prior to November 6, 2015 anyway.   By assessing international transaction fees to debit card transactions prior to November 6, 2015, Bank of America breached the Deposit Agreement and Schedule of Fees and the covenant of good faith and fair dealing, engaged in substantively and procedurally unconscionable practices, and unjustly enriched itself, damaging Plaintiffs and millions of its other accountholders monetarily.

5.     Moreover, at all times since November 6, 2015, Bank of America has promised all of its personal deposit accountholders, in the Schedule of Fees, that it would only assess 3% international transaction fees to debit card transactions made in foreign currencies or with foreign merchants, and for debit card transactions made on the Internet that are processed by merchants in foreign countries. Nonetheless, since November 6, 2015, Bank of America has routinely assessed 3% international transaction fees for online debit card transactions made in U.S. dollars with PayPal, a U.S. company, from within the United States, all of which are processed by PayPal in the United States through acquiring banks located in the United States.  Bank of America continues to engage in these practices to this day.  By assessing international transaction fees to transactions that are not made in a foreign currency or in a foreign country, not made with a foreign merchant, and not processed in a foreign country, Bank of America breached the Deposit Agreement and Schedule of Fees and the covenant of good faith and fair dealing, engaged in substantively and procedurally unconscionable practices, and unjustly enriched itself, damaging Plaintiffs and millions of its other accountholders monetarily.

6.     For people living paycheck to paycheck, like Plaintiffs and the other members of the Classes (defined below), these improperly-assessed fees have had a serious effect on their everyday lives.

7.     Plaintiffs bring this action to recover all of the improperly-assessed international transaction fees that Bank of America has siphoned out of its customers' personal checking accounts over the past five (5) years, and for other legal and equitable remedies.

## JURISDICTION AND VENUE

8.     The Court has original jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332(d)(2) & (6), because each of the two proposed classes is comprised of over 100 class members, because the claims of the members of each of the putative classes exceed $5 million in the aggregate, exclusive of interest and costs, and because at least one member of each of the proposed classes is a citizen of a state different from Bank of America.

9.     Personal jurisdiction and venue are proper in Florida and within this District because Plaintiffs are residents and citizens of Florida; because Plaintiffs' Bank of America checking accounts were opened, and are presently maintained, at Bank of America financial centers located in Florida and within this District; because Plaintiffs' claims alleged herein arose in substantial part in Florida and within this District; and because Bank of America does substantial business in Florida and throughout this District.

## PARTIES

10.     Plaintiff Carlos Alfaro is a United States citizen and resident of Miami, Florida.  At all times mentioned herein, Plaintiff Alfaro has maintained a personal checking account with Bank of America that was opened at a Bank of America branch located in Florida and within this District.

11.     Plaintiff Henrietta I. Egbunike is a United States citizen and resident of Doral, Florida.  At all times mentioned herein, Plaintiff Egbunike has maintained a personal checking account with Bank of America that was opened at a Bank of America branch located in Florida and within this District.

12.     Bank of America is a national bank that maintains its corporate headquarters and principal place of business in Charlotte, North Carolina.  Bank of America provides, inter alia, retail banking products and services to consumers, including personal checking accounts and debit cards.  Bank of America operates banking centers throughout Florida and the United States.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

**I.      THE MECHANICS OF DEBIT CARD PAYMENT PROCESSING**

13.      All e-commerce transactions involve two different banks – one representing the cardholder (the "issuing" bank), and one representing the merchant (the "acquiring" bank).

14.      The issuing bank is the financial institution that issues debit cards to consumers on behalf of the card networks (Visa, MasterCard) and underwrites the consumer/accountholder. The issuer acts as the middle-man for the consumer and the card network by contracting with the cardholders for the terms of the payment of transactions.  During any debit card transaction, the card issuing bank confirms the account holder is who he says he is, verifies that there are funds in the account to cover the purchase, and authorizes the transaction.

15.      The acquiring bank (also known as the "merchant's bank") is the financial institution that maintains the bank account of the merchant on the other side of the transaction. The acquiring bank enables merchants to process debit card transactions because the acquiring bank underwrites the merchant and passes the merchant's transactions along to the applicable issuing banks to receive payment.  The acquiring bank also assigns a Merchant Identification Number (MID) to each merchant whose bank account is maintained at the acquiring bank; this unique code is similar to a bank account number and it's used to identify the merchant while processing transactions.

16.      At the conclusion of each debit card transaction, the acquirer accepts payment from the issuer and deposits the received funds into the merchant's account at the acquiring bank.

17.      As the financial institution that issues debit cards to its accountholders on behalf of the card networks (Visa, MasterCard, etc.), Bank of America is the "issuing bank" in all purchases that its accountholders make with Bank of America-issued debit cards.

18.      Thus, when Bank of America accountholders use their debit cards "to pay for purchases at merchants that accept debit cards" (Ex. A at 1), both online and in person, from both within and outside of the United States, Bank of America processes such transactions in the manner described as follows: "When you use your debit card you authorize the merchant with whom you

FIRST AMENDED CLASS ACTION COMPLAINT

use your card or to whom you previously provided your information to ask Bank of America to approve the transaction you want to make.  At this time, in order for the transaction to go through, we must promise the merchant to pay for the purchase upon the merchant's request." (*Id.* at 18; *see also id.* ("Your debit card transaction is paid when the merchant presents it to Bank of America for payment – that is, when the merchant asks us to transfer the funds from your account to the merchant.").)

## II. PRIOR TO NOVEMBER 6, 2015, BANK OF AMERICA ROUTINELY ASSESSED UNDISCLOSED "INTERNATIONAL TRANSACTION FEES" TO ITS CUSTOMERS' DEBIT CARD TRANSACTIONS

19.     At all relevant times prior to November 6, 2015, Bank of America's relationship with Plaintiffs and its other personal deposit accountholders was governed by the Deposit Agreement.  *See, e.g.,* Compl., Exhibit C (Deposit Agreement dated May 16, 2014), at 2 ("You understand that these terms, as we may change or supplement them periodically, are a binding contract between you and us for your deposit account and your deposit relationship.").

20.     The Deposit Agreement in effect prior to November 6, 2015 expressly incorporated the then-operative Schedule of Fees (Compl., Exhibit D (Schedule of Fees dated February 6, 2015)), which the Deposit Agreement described as containing an exhaustive list of the various fees that Bank of America was permitted to assess to personal deposit accounts, along with the circumstances in which each such fee would be assessed. *See* Compl., Ex. C at 1 ("The *Schedule of Fees* lists our accounts and account fees"); *id.* at 7 ("The *Personal Schedule of Fees* describes our personal accounts and lists applicable fees."); *id.* at 11 ("Your account is subject to the fees described in the *Schedule of Fees* that applies to your account.  The *Personal Schedule of Fees* lists account fees that apply to our personal deposit accounts. . . . The schedule that applies to your account is part of the binding contract between you and us."); *id.* at 13, 14 ("Please review the *Schedule of Fees* for your account carefully.").

21.     Likewise, the Schedule of Fees in effect prior to November 6, 2015 was described by Bank of America as follows:

FIRST AMENDED CLASS ACTION COMPLAINT

> This schedule lists account fees and also explains how you can avoid
> some account fees. Please review the account description for details
> about your account. Other account fees that can apply to your
> account are listed in the account descriptions and in the Other
> Account Fees section.
>
> Your account and deposit relationship with us are governed by this
> schedule of fees and the *Deposit Agreement and Disclosures*. Please
> read both agreements carefully. These agreements are part of the
> binding contract between you and us for your account and deposit
> relationship. You can also find these agreements at
> bankofamerica.com.

(Ex. D at 1 (emphasis added).)

22.     Prior to November 6, 2015, the Schedule of Fees made no mention of the existence of an "international transaction fee" that would be assessed to any debit card transactions, much less the amount of any such undisclosed "international transaction" fee or the circumstances in which such a fee would be assessed to a debit card transaction.  (*See generally* Ex. D (Schedule of Fees dated February 6, 2015, omitting any reference to an "international transaction fee").)

23.     Prior to November 6, 2015, Bank of America also issued a "Clarity Statement" to each accountholder, to assist the customer in "understanding [their] Bank of America Core Checking" account, including its "key policies and fees." (*See* Compl., Exhibit E.)  Bank of America represented the "Clarity Statement" in effect prior to November 6, 2015, consistent with its Schedule of Fees in effect during the same time period, as "summariz[ing]" the key policies and fees" for personal deposit accounts. (*See* Compl., Ex. E at 1; *see also id.* ("For more information about the terms that govern your account, please review your Personal Schedule of Fees and Deposit Agreement.").)  The "Clarity Statement" in effect prior to November 6, 2015, like the Schedule of Fees in effect over the same pre-November 6, 2015 time period, failed to disclose the existence of a 3% international transaction fee.

24.     As further explained below, it was not until Bank of America revised the Schedule of Fees on November 6, 2015 that Bank of America first disclosed the existence of an "international transaction fee," the amount of the fee (3% of the U.S. dollar amount of the underlying transaction), or the circumstances in which the fee would be assessed.

FIRST AMENDED CLASS ACTION COMPLAINT

25.     Accordingly, prior to November 6, 2015, Bank of America plainly was not permitted to assess an "international transaction fee" to any debit card transactions initiated by any of its personal deposit account holders.

26.     Despite the fact that Bank of America was contractually prohibited from assessing "international transaction fees" to debit card transactions initiated by its personal deposit account holders prior to November 6, 2015, Bank of America routinely assessed 3% "international transaction fees" to debit card transactions initiated by its personal deposit account holders prior to November 6, 2015 anyway.

27.     For example, on July 13, 2015, Plaintiff Alfaro used his Bank of America-issued debit card to perform a debit card transaction in the amount of $520.00 with a merchant called "RCSP." Upon Plaintiff Alfaro's initiation of the $520.00 transaction with RCSP using his Bank of America debit card, RCSP's acquiring bank received payment for the transaction from Bank of America, the issuing bank, in funds that had been debited from Plaintiff Alfaro's Bank of America checking account. RCSP's acquiring bank thereafter deposited the $520.00 that had been debited from Plaintiff Alfaro's checking account at Bank of America into RCSP's merchant account at its acquiring bank. Later in the day on July 13, 2015, Bank of America assessed a 3% international transaction fee to Plaintiff Alfaro's account in the amount of $15.60, attributable to the $520.00 debit card transaction that Plaintiff Alfaro had performed with RCSP. Prior to assessing this fee, Bank of America did not disclose to Plaintiff Alfaro in the Schedule of Fees that any debit card transactions were capable of triggering 3% international transaction fees or that this particular debit card transaction would trigger a 3% international transaction fee.

28.     As another example, on August 17, 2015, Plaintiff Alfaro used his Bank of America-issued debit card to perform a debit card transaction in the amount of $165.00 with a merchant called "RCSP." Upon Plaintiff Alfaro's initiation of the $165.00 debit card transaction with RCSP using his Bank of America debit card, RCSP's acquiring bank received payment for the transaction from Bank of America, the issuing bank, in funds that had been debited from Plaintiff Alfaro's Bank of America checking account. RCSP's acquiring bank thereafter deposited

the $165.00 that had been debited from Plaintiff Alfaro's checking account at Bank of America into RCSP's merchant account at its acquiring bank.  Later in the day on August 17, 2015, Bank of America assessed a 3% international transaction fee to Plaintiff Alfaro's account in the amount of $4.95, attributable to the $165.00 debit card transaction that Plaintiff Alfaro had performed with RCSP.  Prior to assessing this fee, Bank of America did not disclose to Plaintiff Alfaro in the Schedule of Fees that any debit card transactions were capable of triggering 3% international transaction fees or that this particular debit card transaction would trigger a 3% international transaction fee.

29.     As a final example, on June 18, 2015, Plaintiff Egbunike used her Bank of America-issued debit card to perform a debit card transaction in the amount of $52.50 with the merchant PayPal.  Upon Plaintiff Egbunike's initiation of the $52.50 debit card transaction with PayPal using her Bank of America debit card, PayPal's acquiring bank received payment for the transaction from Bank of America, the issuing bank, in funds that had been debited from Plaintiff Egbunike's Bank of America checking account.  PayPal's acquiring bank thereafter deposited the $52.50 that had been debited from Plaintiff Egbunike's checking account at Bank of America into PayPal's merchant account at its acquiring bank.  Later in the day on June 18, 2015, Bank of America assessed a 3% international transaction fee to Plaintiff Egbunike's account in the amount of $1.58, attributable to the $52.50 debit card transaction that Plaintiff Egbunike had performed with PayPal.  Prior to assessing this fee, Bank of America did not disclose to Plaintiff Egbunike in the Schedule of Fees that any debit card transactions were capable of triggering 3% international transaction fees or that this particular debit card transaction would trigger a 3% international transaction fee.

30.     By assessing international transaction fees to debit card transactions prior to November 6, 2015, Bank of America breached the Deposit Agreement and Personal Schedule of Fees, damaging Plaintiffs and millions of its other personal deposit account holders monetarily.

FIRST AMENDED CLASS ACTION COMPLAINT

III.    **SINCE NOVEMBER 6, 2015, BANK OF AMERICA HAS ROUTINELY ASSESSED 3% INTERNATIONAL TRANSACTION FEES TO DEBIT CARD TRANSACTIONS MADE IN THE U.S. AND IN U.S. DOLLARS WITH PAYPAL, A DOMESTIC MERCHANT**

31.    At all relevant times since November 6, 2015, Bank of America's relationship with Plaintiffs and its other personal deposit accountholders has also been governed by the Deposit Agreement. *See, e.g.,* Compl., Exhibit F (Deposit Agreement dated November 10, 2017), at 2 ("You understand that these terms, as we may change or supplement them periodically, are a binding contract between you and us for your deposit account and your deposit relationship.").

32.    Since November 6, 2015, the Schedule of Fees has stated that certain debit card transactions are subject to an "International Transaction Fee" of "3% of the U.S. dollar amount of the transaction." (Compl. Exhibit G (Schedule of Fees dated November 6, 2015, at 9.)  Specifically, since November 6, 2015, the Schedule of Fees has stated that "International Transaction Fees" will only apply to debit card purchases made under the following circumstances:

> Fee applies if you use your card to purchase goods or services in a foreign currency or in U.S. dollars with a foreign merchant (a "Foreign Transaction").  Foreign Transactions include internet transactions made in the U.S. but with a merchant who processes the transaction in a foreign country.

(*Id.* at 9.)

33.    Since November 6, 2015 (as well as prior to November 6, 2015), Bank of America has routinely assessed 3% international transaction fees to online debit card transactions with PayPal, made by its customers from within the United States.

34.    However, PayPal is a domestic, U.S.-based merchant. PayPal maintains merchant accounts with various acquiring banks in the United States.  All debit card transactions made by consumers with PayPal from within the United States are processed by one of PayPal's U.S.-based acquiring banks, in U.S. dollars, within the United States.  All debit card transactions made by consumers with PayPal from within the United States were, at all times relevant to this action, including since November 6, 2015, associated with an MID number that was assigned to PayPal and which corresponded to PayPal's merchant account at one of its acquiring banks.

FIRST AMENDED CLASS ACTION COMPLAINT

35.     At the conclusion of each debit card transaction a consumer makes with PayPal from within the United States – in order to pay for goods or services with a business that may be located anywhere in the world – the funds paid by the consumer are received by PayPal's U.S.-based acquiring bank and deposited into PayPal's U.S.-based merchant account at the acquiring bank.

36.     Accordingly, all PayPal debit card transactions that consumers make from within the United States – in order to pay businesses located throughout the world that have contracted with PayPal to receive their payments – are made with and processed by PayPal, a domestic merchant with a merchant account at a U.S.-based acquiring bank.  Accordingly, no debit card transactions made with PayPal from within the United States are "processed in a foreign country" or constitute transactions made with a "foreign merchant."

37.     Despite the fact that all debit card transactions with PayPal made by U.S.-based consumers from within the United States are processed in U.S. dollars by PayPal's acquiring banks in the United States, Bank of America has, at all times relevant to this action, including since November 6, 2015, routinely classified PayPal debit card transactions made by U.S. consumers from within the United States as "foreign transactions," and then systematically subjects all such improperly-classified transactions to the 3% "international transaction fee."

38.     For example, on January 5, 2016, while accessing the Internet from within the United States, Plaintiff Egbunike performed a debit card transaction with PayPal in the amount of $3.78.  Plaintiff Egbunike's $3.78 PayPal transaction on January 5, 2016 was performed on the Internet from within the United States, and was processed by a U.S.-based acquiring bank on behalf of PayPal, a U.S.-based company, in the United States.  This transaction was associated with an MID number that was assigned to PayPal and corresponded to PayPal's merchant account at its acquiring bank.  Upon Plaintiff Egbunike's initiation of the $3.78 transaction with her Bank of America debit card, PayPal's acquiring bank processed the transaction in the United States and received payment for the transaction from Bank of America, the issuing bank, in funds that had been debited from Plaintiff Egbunike's Bank of America checking account.  PayPal's acquiring

bank thereafter deposited the $3.78 that had been debited from Plaintiff Egbunike's checking account at Bank of America into PayPal's merchant account at the acquiring bank. PayPal's bank account at the acquiring bank, into which the $3.78 was deposited, is located in the United States. Because Plaintiff Egbunike paid $3.78 to PayPal in U.S. dollars using her Bank of America debit card on January 5, 2016 from within the United States, and because PayPal processed Plaintiff Egbunike's transaction by way of an acquiring bank located in the United States, Plaintiff Egbunike's $3.78 transaction was not "processe[d] in a foreign country" and was not made to purchase "goods or services . . . with a foreign merchant" or in a "foreign currency." Nonetheless, later in the day on January 5, 2016, Bank of America assessed an international transaction fee of $0.11 to Plaintiff Egbunike's account, attributable to the $3.78 transaction Plaintiff Egbunike had performed with PayPal.

39.     As another example, on June 4, 2018, while accessing the Internet from within the United States, Plaintiff Egbunike performed a debit card transaction with PayPal in the amount of $57.75. Plaintiff Egbunike's $57.75 PayPal transaction on June 4, 2018 was performed on the Internet from within the United States, and was processed by a U.S.-based acquiring bank on behalf of PayPal, a U.S.-based company, in the United States. This transaction was associated with an MID number that was assigned to PayPal and corresponded to PayPal's merchant account at its acquiring bank. Upon Plaintiff Egbunike's initiation of the $57.75 transaction with her Bank of America debit card, PayPal's acquiring bank processed the transaction in the United States and received payment for the transaction from Bank of America, the issuing bank, in funds that had been debited from Plaintiff Egbunike's Bank of America checking account. PayPal's acquiring bank thereafter deposited the $57.75 that had been debited from Plaintiff Egbunike's checking account at Bank of America into PayPal's merchant account at the acquiring bank. PayPal's bank account at the acquiring bank, into which the $57.75 was deposited, is located in the United States. Because Plaintiff Egbunike paid $57.75 to PayPal in U.S. dollars using her Bank of America debit card on June 4, 2018 from within the United States, and because PayPal processed Plaintiff Egbunike's transaction by way of an acquiring bank located in the United States, Plaintiff

FIRST AMENDED CLASS ACTION COMPLAINT

Egbunike's $57.75 transaction was not "processe[d] in a foreign country" and was not made to purchase "goods or services . . . with a foreign merchant" or in a "foreign currency."  Nonetheless, later in the day on June 4, 2018, Bank of America assessed an international transaction fee of $1.73 to Plaintiff Egbunike's account, attributable to the $57.75 transaction Plaintiff Egbunike had performed with PayPal.

40.     By assessing international transaction fees to debit card transactions with PayPal on and after November 6, 2015, Bank of America breached the Deposit Agreement and Personal Schedule of Fees, damaging Plaintiffs and numerous other accountholders monetarily.

## CLASS ALLEGATIONS

41.     Plaintiffs bring this action on behalf of themselves and two classes of others similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure.  This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of Rule 23 with respect to each of the two classes.

42.     The first proposed class, defined as the "Undisclosed FX Fee Class," is comprised of as follows:

> All individuals in the United States who, at any time between July 3, 2014 and November 5, 2015, held a personal checking account with Bank of America that was assessed (and was not refunded by Bank of America) an "international transaction fee" attributable to a debit card transaction.

43.     The second proposed class, defined as the "PayPal FX Fee Class," is comprised of as follows:

> All individuals in the United States who, at any time between November 6, 2015 and the date of any order granting class certification, held a personal checking account with Bank of America that was assessed (and was not refunded by Bank of America) an "international transaction fee" attributable to a debit card transaction made on the Internet with PayPal, in U.S. dollars, from within the United States.

44.     The Undisclosed FX Fee Class and the PayPal FX Fee Class are at times herein referred to collectively as the "Classes."

FIRST AMENDED CLASS ACTION COMPLAINT

45.     Plaintiffs reserve the right to modify or amend the definition of the proposed Classes before the Court determines whether certification is appropriate.

46.     Excluded from the Classes are Bank of America, its parents, subsidiaries, affiliates, officers and directors, any entity in which Bank of America has a controlling interest, all customers who make a timely election to be excluded, governmental entities, counsel for the parties, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

47.     The members of each of the Classes are so numerous that joinder is impractical. On information and belief, each of the Classes consists of millions of members, the identities of whom are within the knowledge of Bank of America and can be ascertained only by resort to Bank of America's records.

48.     With respect to members of the Undisclosed FX Fee Class, the claims of the representative Plaintiffs are typical of the claims of the Undisclosed FX Fee Class in that the representative Plaintiffs, like all Undisclosed FX Fee Class members, were were assessed international transaction fees by Bank of America between July 3, 2014 and November 5, 2015. Plaintiffs, like all members of the Undisclosed FX Fee Class, have been damaged by Bank of America's misconduct in that they were assessed international transaction fees in breach of the governing Deposit Agreement.  Furthermore, the factual basis of Bank of America's misconduct is common to all Undisclosed FX Fee Class members and represents a common thread of unlawful, unfair, and unconscionable conduct resulting in injury to all members of the Undisclosed FX Fee Class.

49.     There are numerous questions of law and fact common to the Undisclosed FX Fee Class and those common questions predominate over any questions affecting only individual Undisclosed FX Fee Class members.   Among the questions of law and fact common to the Class are:

> a.   whether Bank of America assessed international transaction fees for debit card transactions between July 3, 2014 and November 5, 2015;

FIRST AMENDED CLASS ACTION COMPLAINT

b.  whether the assessment of international transaction fees to such transactions constituted breaches of the Deposit Agreement and incorporated Personal Schedule of Fees, breaches of the covenant of good faith and fair dealing, unconscionable acts, and/or acts from which Bank of America was unjustly enriched;

c.  the proper method or methods by which to measure damages;

d.  whether the Undisclosed FX Fee Class is entitled to interest that has accrued on any improperly assessed international transaction fees; and

e.  the declaratory relief to which the Undisclosed FX Fee Class is entitled.

50.    With respect to members of the PayPal FX Fee Class, the claims of the representative Plaintiffs are typical of the claims of the PayPal FX Fee Class in that the representative Plaintiffs, like all PayPal FX Fee Class members, were were assessed international transaction fees by Bank of America between November 6, 2015 and the present for PayPal debit card transactions made from within the United States.  Plaintiffs, like all members of the PayPal FX Fee Class, have been damaged by Bank of America's misconduct in that they were assessed international transaction fees in breach of the governing Deposit Agreement.  Furthermore, the factual basis of Bank of America's misconduct is common to all PayPal FX Fee Class members and represents a common thread of unlawful, unfair, and unconscionable conduct resulting in injury to all members of the PayPal FX Fee Class.

51.    There are numerous questions of law and fact common to the PayPal FX Fee Class and those common questions predominate over any questions affecting only individual Class members.   Among the questions of law and fact common to the PayPal FX Fee Class are:

a.  whether Bank of America assessed international transaction fees for debit card transactions made on the Internet with PayPal from within

FIRST AMENDED CLASS ACTION COMPLAINT

the United States and in U.S. dollars between November 6, 2015 and

the present;

b.  whether PayPal processes such transactions in the United States;

c.  whether the assessment of 3% international transaction fees to such
transactions constituted breaches of the Deposit Agreement and
incorporated Personal Schedule of Fees, breaches of the covenant of
good faith and fair dealing, unconscionable acts, and/or acts from
which Bank of America was unjustly enriched;

d.  the proper method or methods by which to measure damages;

e.  whether the PayPal FX Fee Class is entitled to interest that has
accrued on any improperly assessed international transaction fees;
and

f.  the declaratory relief to which the PayPal FX Fee Class is entitled.

52.     Plaintiffs' claims are typical of the claims of other members of the Classes in that
they arise out of the same Bank of America policies pursuant to the same governing Deposit
Agreement and other related documents in effect between the pertinent periods of time, and arise
out of the same conduct and practices of Bank of America in assessing international transaction
fees for debit card transactions (and, with respect to the PayPal FX Fee Class, for debit card
transactions with PayPal made online, from within the United States, and in U.S. dollars since
November 6, 2015). Plaintiffs have no interests antagonistic to the interests of any other member
of either of the Classes.

53.     Plaintiffs are committed to the vigorous prosecution of this action and have retained
competent counsel experienced in the prosecution of consumer class actions.   Accordingly,
Plaintiffs are adequate representatives and will fairly and adequately protect the interests of the
Classes.

54.     A class action is superior to other available methods for the fair and efficient
adjudication of this controversy.  Since the amount of each individual claim is small relative to the

FIRST AMENDED CLASS ACTION COMPLAINT

complexity of the litigation, and due to the enormity of the financial resources of Bank of America, no member of either of the Classes could afford to seek legal redress individually for the claims alleged herein.  Therefore, absent a class action, members of the Classes would lose their rights by attrition.

55.     Even if members of the Classes could afford such individual litigation, the court system could not. Given the complex nature of the issues involved in this action, individualized litigation would significantly delay and cause expense to all parties and the Court.  Individualized litigation would also create the potential for inconsistent or contradictory rulings.  By contrast, a class action presents far fewer management difficulties, allows claims to be heard which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale, and comprehensive supervision by a single court.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**BREACH OF CONTRACT**
**(By Plaintiffs Individually and On Behalf of the Undisclosed FX Fee Class)**

56.     Plaintiffs repeat and incorporate herein all allegations from paragraphs 1-55 above.

57.     Plaintiffs and all members of the Undisclosed FX Fee Class contracted with Bank of America for bank account deposit, checking, ATM, and debit card services, as embodied in Bank of America's Deposit Agreement and Schedule of Fees in effect at all times between July 3, 2014 and November 5, 2015.

58.     In plain, clear, and simple language, in the Deposit Agreement and Schedule of Fees in effect between July 3, 2014 and November 5, 2015, Bank of America promised Plaintiffs and all other members of the Undisclosed FX Fee Class that it would only assess the fees disclosed to them in the Schedule of Fees.

59.     The Schedule of Fees in effect between July 3, 2014 and November 5, 2015 failed to disclose to Plaintiffs and the members of the Undisclosed FX Fee Class the existence of a 3% international transaction fee that was applicable to any type of debit card transactions made by Plaintiffs or any other members of the Undisclosed FX Fee Class.

60.    Bank of America breached the express terms of the Deposit Agreement and related account documentation in effect between July 3, 2014 and November 5, 2015 when it assessed international transaction fees to debit card transactions that made by Plaintiffs and the other members of the Undisclosed FX Fee Class between July 3, 2014 and November 5, 2015.

61.    Plaintiffs and members of the Undisclosed FX Fee Class have performed all of the obligations imposed on them under the Deposit Agreement and Schedule of Fees in effect between July 3, 2014 and November 5, 2015.

62.    Plaintiffs and members of the Undisclosed FX Fee Class sustained monetary damages between July 3, 2014 and November 5, 2015 as a result of Bank of America's breaches of the Deposit Agreement and Schedule of Fees in effect between July 3, 2014 and November 5, 2015.

<u>SECOND CAUSE OF ACTION</u>
**BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING**
**(By Plaintiffs Individually and On Behalf of the Undisclosed FX Fee Class)**

63.    Plaintiffs repeat and incorporate herein all allegations from paragraphs 1-55 above.

64.    Under the laws of the states where Bank of America does business, good faith is an element (and was an element prior to November 6, 2015) of every contract pertaining to the assessment of service and transaction fees. Whether by common law or statute, all such contracts imposed and continue to impose upon each party a duty of good faith and fair dealing.

65.    Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

66.    Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes his conduct to be justified. Bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty. Examples of bad faith are evasion of the

spirit of the bargain; willful rendering of imperfect performance; hiding, concealing, or disclosing in an inaccessible manner purportedly contractual terms; abuse of a power to specify terms; and interference with or failure to cooperate in the other party's performance.

67.     Prior to November 6, 2015, Bank of America breached the covenant of good faith and fair dealing in the Deposit Agreement and Schedule of Fees through its practices of assessing international transaction fees as alleged herein, including to the extent the existence of a 3% international transaction fee and/or the policy for assessing such fees to foreign debit card transactions were hidden, concealed, or disclosed by Bank of America in an inaccessible manner in a document other than the Schedule of Fees prior to November 6, 2015.

68.     Plaintiffs and the members of the Undisclosed FX Fee Class have performed all, or substantially all, of the obligations imposed on them under the Deposit Agreement and Schedule of Fees.

69.     Plaintiffs and members of the Undisclosed FX Fee Class have sustained damages as a result of Bank of America's breach of the covenant of good faith and fair dealing.

### THIRD CLAIM FOR RELIEF
#### UNCONSCIONABILITY
**(By Plaintiffs Individually and on Behalf of the Undisclosed FX Fee Class)**

70.     Plaintiffs repeat and incorporate herein all allegations from paragraphs 1-55 above.

71.     Bank of America's international transaction fee and other fee-assessment policies and practices were substantively and procedurally unconscionable prior to November 6, 2015 in the following respects, among others:

  a.  Bank of America did not disclose or reasonably disclose to customers that Bank of America would assess international transaction fees to foreign or international debit card transactions, the amount of such international transaction fees, or the circumstances in which Bank of America would assess such international transaction fees;

FIRST AMENDED CLASS ACTION COMPLAINT

b.  Bank of America did not obtain affirmative consent from checking account customers prior to assessing 3% international transaction fees to foreign debit card transactions;

c.  Bank of America did not alert its customers that a debit card transaction would trigger a 3% international transaction fee, and did not provide the customer the opportunity to cancel that transaction, before authorizing and assessing a 3% international transaction fee to such transaction; and

d.  The Deposit Agreement and Schedule of Fees provided to customers were ineffective, ambiguous, deceptive, unfair, and misleading in that they omitted any mention of, or failed to unambiguously state or disclose, Bank of America's practices of authorizing foreign debit card transactions and assessesing international transaction fees of 3% of the U.S. dollar amount of such transactions to the customer's personal deposit account.

72.    Considering the great business acumen and experience of Bank of America in relation to Plaintiffs and the members of each of the Classes, the great disparity in the parties' relative bargaining power, the inconspicuousness and incomprehensibility of the contract language at issue, the oppressiveness of the terms, the commercial unreasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the parties, and similar public policy concerns, these provisions are unconscionable and, therefore, unenforceable as a matter of law.

73.    Plaintiffs and members of the Undisclosed FX Fee Class have sustained damages as a result of Bank of America's unconscionable policies and practices as alleged herein.

### FOURTH CLAIM FOR RELIEF
### UNJUST ENRICHMENT
**(By Plaintiffs Individually and on Behalf of The Undisclosed FX Fee Class)**

74.    Plaintiffs repeat and incorporate herein all allegations from paragraphs 1-55 above.

75.    Plaintiffs, on behalf of themselves and the members of the Undisclosed FX Fee Class, assert a common law claim for unjust enrichment.

76.     By means of Bank of America's wrongful conduct prior to November 6, 2015 as alleged herein, Bank of America knowingly provided banking services to Plaintiffs and members of the Undisclosed FX Fee Class that were unfair, unconscionable, and oppressive.

77.     Bank of America knowingly received and retained wrongful benefits and funds from Plaintiffs and members of the Undisclosed FX Fee Class prior to November 6, 2015 as alleged herein. In so doing, Bank of America acted with conscious disregard for the rights of Plaintiffs and members of the Undisclosed FX Fee Class prior to November 6, 2015.

78.     As a result of Bank of America's wrongful conduct prior to November 6, 2015 as alleged herein, Bank of America has been unjustly enriched at the expense of, and to the detriment of, Plaintiffs and members of the Undisclosed FX Fee Class.

79.     Bank of America's unjust enrichment was traceable to, and resulted directly and proximately from, its wrongful conduct prior to November 6, 2015 as alleged herein.

80.     Under the common law doctrine of unjust enrichment, it is inequitable for Bank of America to be permitted to retain the benefits it received, and is still receiving, without justification, from the imposition of 3% international transaction fees on Plaintiffs and members of the Undisclosed FX Fee Class prior to November 6, 2015 in an unfair, unconscionable, and oppressive manner. Bank of America's retention of such funds under circumstances making it inequitable to do so constitutes unjust enrichment.

81.     The financial benefits derived by Bank of America prior to November 6, 2015 rightfully belong to Plaintiffs and members of the Undisclosed FX Fee Class. Bank of America should be compelled to disgorge in common funds for the benefit of Plaintiffs and members of the Undisclosed FX Fee Class all wrongful or inequitable proceeds received by them prior to November 6, 2015. A constructive trust should be imposed upon all wrongful or inequitable sums received by Bank of America traceable to Plaintiffs and the members of the Undisclosed FX Fee Class.

82.     Plaintiffs and members of the Undisclosed FX Fee Class have no adequate remedy at law.

**FIFTH CAUSE OF ACTION**
**BREACH OF CONTRACT**
**(By Plaintiffs Individually and On Behalf of the PayPal FX Fee Class)**

83.     Plaintiffs repeat and incorporate herein all allegations from paragraphs 1-55 above.

84.     Plaintiffs and all members of the PayPal FX Fee Class contracted with Bank of America for bank account deposit, checking, ATM, and debit card services, as embodied in Bank of America's Deposit Agreement and Schedule of Fees in effect at all times between November 6, 2015 and the present.

85.     In plain, clear, and simple language, in the Deposit Agreement and Schedule of Fees in effect November 6, 2015 and the present, Bank of America promised Plaintiffs and all other members of the PayPal FX Fee Class that it would only assess international transaction fees for transactions made in foreign currencies or with foreign merchants, and for transactions made on the Internet from within the United States that were processed in foreign countries.

86.     Bank of America breached the express terms of the Deposit Agreement and Schedule of Fees in effect between November 6, 2015 and the present when it assessed international transaction fees for PayPal debit card transactions that were made by Plaintiffs and the other members of the PayPal FX Fee Class on the Internet, from within the United States, and in U.S. dollars, and which were processed by PayPal, a U.S.-based merchant, in the United States, between November 6, 2015 and the present.

87.     Plaintiffs and members of the PayPal FX Fee Class have performed all of the obligations imposed on them under the Deposit Agreement and Schedule of Fees in effect between November 6, 2015 and the present.

88.     Plaintiffs and members of the PayPal FX Fee Class sustained monetary damages between November 6, 2015 and the present as a result of Bank of America's breaches of the Deposit Agreement and Schedule of Fees in effect between November 6, 2015 and the present.

**SIXTH CAUSE OF ACTION**
**BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING**
**(By Plaintiffs Individually and On Behalf of the PayPal FX Fee Class)**

89.     Plaintiffs repeat and incorporate herein all allegations from paragraphs 1-55 above.

90.     Under the laws of the states where Bank of America does business, good faith is an element (and has been an element at all times since November 6, 2015) of every contract pertaining to the assessment of service and transaction fees. Whether by common law or statute, all such contracts imposed and continue to impose upon each party a duty of good faith and fair dealing.

91.     Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

92.     Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes his conduct to be justified. Bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty. Examples of bad faith are evasion of the spirit of the bargain; willful rendering of imperfect performance; hiding, concealing, or disclosing in an inaccessible manner purportedly contractual terms; abuse of a power to specify terms; and interference with or failure to cooperate in the other party's performance.

93.     Since November 6, 2015, Bank of America breached the covenant of good faith and fair dealing in the Deposit Agreement and Schedule of Fees through its practices of assessing international transaction fees to PayPal debit card transactions as alleged herein, including to the extent Bank of America has failed to construe PayPal as the "merchant" within the meaning of the Deposit Agreement and Schedule of Fees in connection with PayPal debit card transactions since November 6, 2015.

94.     Plaintiffs and the members of the PayPal FX Fee Class have performed all, or substantially all, of the obligations imposed on them under the Deposit Agreement and Schedule of Fees.

95.     Plaintiffs and members of the PayPal FX Fee Class have sustained damages as a result of Bank of America's breach of the covenant of good faith and fair dealing.

FIRST AMENDED CLASS ACTION COMPLAINT

## SEVENTH CLAIM FOR RELIEF
### UNCONSCIONABILITY
**(By Plaintiffs Individually and on Behalf of the PayPal FX Fee Class)**

96.     Plaintiffs repeat and incorporate herein all allegations from paragraphs 1-55 above.

97.     Bank of America's international transaction fee policies and practices with respect to PayPal debit card transactions have been substantively and procedurally unconscionable at all times since (as well as prior to) November 6, 2015 in the following respects, among others:

a.    Bank of America has not disclosed or reasonably disclosed to customers since November 6, 2015 that Bank of America would assess international transaction fees to PayPal debit card transactions, that PayPal would not be considered a "merchant" within the meaning of the Deposit Agreement and Schedule of Fees in connection with PayPal debit card transactions, or the circumstances in which Bank of America would assess such international transaction fees to PayPal debit card transactions since November 6, 2015;

b.    Bank of America has not obtained affirmative consent from its personal deposit account holders since November 6, 2015 prior to assessing 3% international transaction fees on PayPal debit card transactions that Bank of America has deemed "foreign" or "international" transactions within the meaning of the Deposit Agreement and Schedule of Fees;

c.    Bank of America has not since November 6, 2015 alerted its customers that PayPal debit card transactions would trigger a 3% international transaction fee, and has not since November 6, 2015 provided the customer the opportunity to cancel that transaction, before assessing 3% international transaction fees to such PayPal debit card transactions since November 6, 2015; and

d.    The Deposit Agreement and Schedule of Fees provided to customers are ineffective, ambiguous, deceptive, unfair, and misleading in that since November 6, 2015 they have omitted any mention of, or failed to unambiguously state or disclose, Bank of America's practices of authorizing PayPal debit card transactions

FIRST AMENDED CLASS ACTION COMPLAINT

that it deems "foreign" or "international" transactions and assessesing international transaction fees of 3% of the U.S. dollar amount of such PayPal debit card transactions to the customer's personal deposit account.

98.     Considering the great business acumen and experience of Bank of America in relation to Plaintiffs and the members of the PayPal FX Fee Class, the great disparity in the parties' relative bargaining power, the inconspicuousness and incomprehensibility of the contract language at issue, the oppressiveness of the terms, the commercial unreasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the parties, and similar public policy concerns, these provisions are unconscionable and, therefore, unenforceable as a matter of law.

99.     Plaintiffs and members of the PayPal FX Fee Class have sustained damages as a result of Bank of America's unconscionable policies and practices as alleged herein.

**EIGHTH CLAIM FOR RELIEF**
**UNJUST ENRICHMENT**
**(By Plaintiffs Individually and on Behalf of the PayPal FX Fee Class)**

100.    Plaintiffs repeat and incorporate herein all allegations from paragraphs 1-55 above.

101.    Plaintiffs, on behalf of themselves and the members of the PayPal FX Fee Class, assert a common law claim for unjust enrichment.

102.    By means of Bank of America's wrongful conduct at all times since November 6, 2015 as alleged herein, Bank of America knowingly provided banking services to Plaintiffs and members of the the PayPal FX Fee Class that were unfair, unconscionable, and oppressive.

103.    Bank of America has knowingly received and retained wrongful benefits and funds from Plaintiffs and members of the PayPal FX Fee Class since November 6, 2015 as alleged herein. In so doing, Bank of America acted with conscious disregard for the rights of Plaintiffs and members of the PayPal FX Fee Class since November 6, 2015.

104.    As a result of Bank of America's wrongful conduct since November 6, 2015 as alleged herein, Bank of America has been unjustly enriched at the expense of, and to the detriment of, Plaintiffs and members of the PayPal FX Fee Class.

105.    Bank of America's unjust enrichment was traceable to, and resulted directly and proximately from, its wrongful conduct since November 6, 2015 as alleged herein.

106.    Under the common law doctrine of unjust enrichment, it is inequitable for Bank of America to be permitted to retain the benefits it received, and is still receiving, without justification, from the imposition of 3% international transaction fees for PayPal debit card transactions on Plaintiffs and members of the PayPal FX Fee Class since November 6, 2015 in an unfair, unconscionable, and oppressive manner. Bank of America's retention of such funds under circumstances making it inequitable to do so constitutes unjust enrichment.

107.    The financial benefits derived by Bank of America since November 6, 2015 rightfully belong to Plaintiffs and members of the PayPal FX Fee Class.  Bank of America should be compelled to disgorge in common funds for the benefit of Plaintiffs and members of the  PayPal FX Fee Class all wrongful or inequitable proceeds received by them since November 6, 2015. A constructive trust should be imposed upon all wrongful or inequitable sums received by Bank of America traceable to Plaintiffs and the members of the PayPal FX Fee Class.

108.    Plaintiffs and members of the PayPal FX Fee Class have no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Carlos Alfaro and Henrietta I. Egbunike, individually and on behalf of the proposed Classes, demand a jury trial on all claims so triable and judgment as follows:

A.    Certifying the Undisclosed FX Fee Class and the PayPal FX Fee Class pursuant to Federal Rule of Civil Procedure 23;

B.    Declaring Bank of America's international transaction fee assessment practices described above to be wrongful, unfair, and unconscionable, and in breach of the Deposit Agreement and Schedule of Fees;

C.    Declaring Bank of America's international transaction fee assessment practices described above to be wrongful, unfair, and unconscionable, and in breach of the covenant of good faith and fair dealing;

FIRST AMENDED CLASS ACTION COMPLAINT

D.      Awarding restitution of all improperly-collected international transaction fees attributable to the wrongful conduct alleged herein;

E.      Awarding actual damages in amounts according to proof;

F.      Disgorgement of the ill-gotten gains derived by Bank of America from its misconduct alleged herein;

G.      Awarding punitive and exemplary damages;

H.      Awarding pre-judgment interest at the maximum rates permitted by applicable law;

I.      Awarding costs and disbursements assessed by Plaintiffs in connection with this action, including reasonable attorneys' fees pursuant to applicable law; and

J.      Awarding such other relief as this Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiffs, on behalf of themselves and the Classes, hereby demand a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all claims so triable.

Dated:  August 5, 2019                    Respectfully submitted,

                                          By: s/ Frank S. Hedin
                                              Frank S. Hedin

                                          **HEDIN HALL LLP**
                                          Frank S. Hedin (FBN 109698)
                                          fhedin@hedinhall.com
                                          1395 Brickell Ave, Suite 900
                                          Miami, Florida 33131
                                          Tel: (305) 357-2107
                                          Fax: (305) 200-8801

                                          **AHDOOT & WOLFSON, PC**
                                          Robert Ahdoot*
                                          rahdoot@ahdootwolfson.com
                                          10728 Lindbrook Drive
                                          Los Angeles, California 90024
                                          Tel: (310) 474-9111
                                          Fax: (310) 474-8585

                                          * *Pro Hac Vice* Application Forthcoming

                                          *Counsel for Plaintiffs and the Putative Classes*

FIRST AMENDED CLASS ACTION COMPLAINT